**A. B. & C. MOTOR TRANSP. CO., Inc., et al. v. UNITED STATES et al.**

Civil Action No. 4992.

District Court, D. Massachusetts.

Dec. 9, 1946.

James Julian Weinstein, of Boston, Mass., for plaintiff.

Edward J. Hickey, Jr., and Edward Dumbauld, Sp. Assts. to Atty. Gen., George F. Garrity, U. S. Atty., of Boston, Mass., and Wendell Berge, Asst. Atty. Gen., for the United States.

E. M. Reidy, Asst. Chief Counsel, and Daniel W. Knowlton, Chief Counsel, both of Washington, D. C., for defendant Interstate Commerce Commission.

Harry C. Ames, Jr. and Joseph A. Kline, both of Boston, Mass., for intervener Fish Transport Co., Inc.

Before WOODBURY, Circuit Judge, and FORD and HEALEY, District Judges.

PER CURIAM.

This is an action to set aside and annul an order of the Interstate Commerce Commission made on May 28, 1945, and a certificate of public convenience and necessity issued December 19, 1945, by which the Commission granted the application of the Fish Transport Company, Inc., to transport as a common carrier by motor vehicle general commodities, with usual exceptions, from New York, New York, to New Bedford, Massachusetts, serving points in the New York Commercial zone, Providence, East Providence, and Pawtucket, Rhode Island, and Fall River, Taunton, and Brockton, Massachusetts, as intermediate or off route points with transportation restricted to traffic originating at points in the New York commercial zone.

Jurisdiction is invoked under 28 U.S.C. A. §§ 41(28) and 43–48, and 49 U.S.C.A. § 305(g).

By previous action of the Commission under the "grandfather" provisions of the Interstate Commerce Act (hereinafter called the Act), Section 206(a) of the Motor Carrier Act, now Part II of the Interstate Commerce Act, 49 U.S.C.A. § 306(a), the Fish Transport Company, Inc., had been authorized to transport southbound from certain points in Massachusetts and Rhode Island to points in New York, Philadelphia, and Providence certain commodities consisting mainly of fish and cranberries, and was limited in its return trips north to transportation of malt beverages. The certificate in question here was by application dated July 1, 1944, and granted under the provisions of Section 207 of the Act, 49 U.S.C.A. § 307. Applicant had previously requested the authority granted in its "grandfather" application but it was denied because of lack of proof that it had been conducting general commodity operations immediately prior and subsequent to the statutory date, June 1, 1935. The order denying that application, delayed by proceedings in the United States District Court for Massachusetts, became effective February 15, 1945. Prior to this date, viz., from January 1, 1939, to August 17, 1944, the applicant had conducted a general commodity operation.

The plaintiffs in this suit are motor carrier competitors of the applicant over the same route and within the same territory for which application was made to institute the proposed service.

The Commission in its order and report of May 28, 1945, concluded that the present and future public convenience and necessity required the continuance of applicant's operation as sought, and that applicant was fit and able properly to perform them. Section 207(a), 49 U.S.C.A. § 307(a).

The plaintiffs here challenge the validity of the Commission's order and issuance of the certificate on four grounds: (a) The ultimate conclusion of the Commission that the present and future public convenience and necessity required the issuance of the certificate was not based upon substantial evidence and findings; (b) that the Commission committed error in admitting evidence of the applicant's past operations on the issue of public convenience and necessity; (c) that the Commission was in error in failing to make a positive finding that existing carriers cannot absorb the public demands for transportation service; (d) the conclusion that the applicant was a fit and proper company to perform the service was not based on substantial evidence.

■ As proof that public convenience and necessity required the service proposed, the applicant submitted evidence of approximately 5,000 shipments, conducted under color of "grandfather" rights, which it transported from and to the points of the designated route during a period of over five years from January 1, 1939 to August 17, 1944. New Bedford was served with over 300 shipments and Fall River with over 200 in 1939, 1940, and 1941. These shipments comprised a wide variety of commodities. Applicant transported 29 shipments to Providence in 1939, 42 in 1940, and 115 in 1941. Taunton has been served since January, 1943, chiefly with shipments of hides and skins. Brockton was served frequently in 1939, 1940, and 1941. Some of these shipments consisted of commodities other than wines and liquors. Further, there was testimony from shippers, not necessary to record in detail, that showed substantial monthly shipments from 1942 to 1944. According to the testimony of shippers, the applicant, by prompt pick-up of shipments, has rendered better service than other motor carriers. There was further evidence that showed the desirability of the applicant's services in the shipments of preserves to New Bedford. An oil shipper to the extent of 600 tons each year testified as to the desirability of a continuance of the service. There was other testimony in the same direction from shippers of wire, cables, meat, fishing supplies, such as, netting, ropes, anchors, and chains who had used the applicant's services.

The Commission found the facts reflected by the above evidence and found that the service proposed by the appli-

cant could not be regarded as a new operation; that it was serving the described points for many years under color of "grandfather" rights and had developed a substantial operation in general commodities between the points; that the applicant rendered better service than other motor carriers previously had; that the authorization to transport diversified commodities on return trips to New Bedford and nearby points would enable the applicant to perform a more efficient and economical transportation service for the public.

It seems plain that the Commission had before it substantial evidence upon which to base its findings stated in the report and its ultimate conclusion that the applicant's service was required by public convenience and necessity. It was left to the Commission by Congress to find the facts and in the exercise of reasonable judgment to determine whether additional motor service would serve public convenience and necessity and if its decision is supported by substantial evidence the finding must stand in the absence of any mistake of law. Interstate Commerce Commission v. Parker, 326 U.S. 60, 65, 65 S.Ct. 1490, 89 L.Ed. 2051; Chesapeake & Ohio R. Co. v. United States, 283 U.S. 35, 42, 51 S.Ct. 337, 75 L.Ed. 824.

The Commission committed no error in admitting evidence of the applicant's past operations on the issue of public convenience and necessity. The rule is well settled that where past operations have been conducted under color of "grandfather" rights, openly and without subterfuge, they are competent evidence on the issue of public convenience and necessity. Crichton v. United States, D. C., 56 F.Supp. 876, 879, 880; D. A. Beard Truck Lines Co., Com. Carr. Applic.—New Operation, 34 MCC. 395, 397. The Commission found, as stated above, that the applicant was not a new operator, that it had conducted substantial shipments of the type authorized by the certificate over a period of five years openly and without subterfuge under color of "grandfather" rights in competition with other motor and rail carriers. Although such evidence is not controlling, the Commission had a right to consider it with the testimony of the shipper-witnesses in determining the issue of public convenience and necessity. D. A. Beard Co., case, supra, page 397.

The Commission's decision that the transportation service proposed by the applicant is required by public convenience and necessity is not invalidated by the absence of a positive finding that existing carriers are not providing adequate transportation facilities. An increase in competition is not a reason for denying the Commission's authority to issue a certificate. The Supreme Court in United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, at page 532, 66 S.Ct. 687, at page 696, stated: " * * * the Commission, in making the separately stated findings, could not have been oblivious to the competitive consequences of its order or the relation of those consequences to the public interest." And in the footnote, 327 U.S. page 532, 66 S.Ct. 696, the following appeared: "The Commission has recognized the value of reasonable competition, cf. Chesapeake & Ohio R. Co. v. United States, 283 U.S. 35, 51 S.Ct. 337, 75 L.Ed. 824; United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 66 S.Ct. 75; Inland Motor Freight v. United States, D. C., 36 F. Supp. 885; 44 M.C.C. 535, 548, in no case perhaps more clearly than in those presented on this appeal." Further, on page 532 of 327 U.S., on page 696 of 66 S.Ct., the Supreme Court, went on to state: " * * * those findings, read in the light of the report, adequately and expressly cover the element of public convenience and necessity, including the competitive factors which the Commission inescapably had in mind." This case precludes any suggestion that carriers initially in a field are immune against additional and competitive carriers in the face of public convenience and necessity. As stated in Section 207(b), 49 U.S.C.A. § 307(b), a certificate under the Act does not confer any proprietary or property rights in the use of the public highways. See also Davidson Transfer & Storage Co. v. United

States, D. C., 42 F.Supp. 215, aff'd per curiam, 317 U.S. 587, 63 S.Ct. 31, 87 L.Ed. 481. Inland Motor Freight v. United States, D. C., 60 F.Supp. 520, 524, contra. In the light of the cases cited the Commission was not required to make the positive finding that existing service was inadequate.

■ The point remains whether the Commission's finding that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of the Act, and requirements, rules, and regulations of the Commission was based on substantial evidence. The evidence showed that applicant had paid a fine in 1941 for violations of the Act. Plaintiffs lean heavily upon this fact to show unfitness. The plaintiffs concede that a conviction of violating the Act is not a bar to granting the authority sought. The evidence showed it had not been convicted of any violation of the Act or rules and regulations of the Commission since 1941. The applicant was a carrier for a long period of time. There was ample evidence of applicant's operational set-up, its financial status, and extensive operations over a period of more than five years. The evidence also demonstrated the excellent reputation applicant enjoyed with numerous shippers who testified. Enough has been said to make it plain that the Commission's ultimate conclusion as to fitness and willingness to perform the service proposed was amply justified by the evidence.

The complaint is dismissed.