208 F.Supp. 567 (1962)
SLOAN'S MOVING & STORAGE CO., Inc., Plaintiff,
v.
UNITED STATES of America and Interstate Commerce Commission, Defendants,
and
United Parcel Service, Inc., Additional Defendant.
No. 62 C 5.
United States District Court E. D. Missouri, E. D.
September 11, 1962.
*568 Herbert Burstein, Zelby & Burstein, New York City, G. F. Gunn, Jr., LaTourette & Rebman, St. Louis, Mo., for plaintiff.
D. Jeff Lance, U. S. Atty., St. Louis, Mo., Donald L. Hardison, Atty., Department of Justice, Washington, D. C., for defendant United States of America.
Harold D. McCoy, Secretary, Interstate Commerce Commission, Washington, D. C., H. Neil Garson, Associate Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for defendant Interstate Commerce Commission.
Irving R. Segal, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Richmond C. Coburn, St. Louis, Mo., for additional defendant United Parcel Service, Inc.
Before VAN OOSTERHOUT, Circuit Judge, HARPER, Chief Judge, and MOORE, District Judges.
VAN OOSTERHOUT, Circuit Judge.
Sloan's Moving & Storage Co., Inc. (hereinafter called Sloan) brings this action against the United States and the Interstate Commerce Commission to set aside and annul in whole or in part the order of the Commission, dated October 27, 1961, in MC-115495 (Sub. No. 3) granting the application of United Parcel Service, Inc. (hereinafter called UPS) for a Certificate of Public Convenience and Necessity authorizing UPS to operate as a common carrier by motor vehicle of small parcels over irregular routes.
The nature of the transportation service applied for and granted is described in detail in the Commission's order. Briefly summarized, UPS sought authority to transport packages (excluding certain specified types) weighing not more than 50 pounds and not exceeding 108 inches in length and girth combined, between all points in the states of Illinois, Indiana and Ohio, and in specified portions of the states of Missouri, Michigan, Wisconsin and Iowa, except that no service would be afforded for delivery between retail stores and their branches or warehouses or between retail stores and their customers. At the hearing a further restriction was added that not more than 100 pounds of packages from one consignor at one location to one consignee at one location would be accepted on any one day. The parties are completely familiar with the nature and characteristics of the proposed UPS service and such service is similar to that described in some detail in Yale Transport Corp. v. United States, D.C. S.D.N.Y., 185 F.Supp. 96, affirmed per curiam 365 U.S. 566, 81 S.Ct. 754, 5 L.Ed.2d 806.
Jurisdiction of this court is invoked under 28 U.S.C.A. §§ 1336, 2321-2325, and 5 U.S.C.A. § 1009. This three-judge court, constituted as required by 28 U. S.C.A. § 2284, has convened for the purpose of hearing and determining this case.
UPS was permitted to intervene as an additional defendant. By stipulation of counsel for all parties and order of this court, this case was set for hearing on July 19, 1962, on the issue of Sloan's right to the permanent injunction prayed for in its complaint. The case was reached for hearing on July 19, 1962. A certified copy of the records of the proceedings before the Commission, including the evidence introduced, the exhibits, the report of the examiner, and all orders of the Commission were received in evidence. Counsel for all parties filed timely written briefs and orally argued the case, whereupon the case was submitted and taken under advisement.
Sloan urges that it is entitled to have the challenged certificate issued to UPS *569 declared null and void in whole or in part, for the following reasons:
"Point I.
"There is no evidence that the present and future public convenience and necessity requires United's service and the findings made by the Examiner were not supported by substantial evidence."
"Point II.
"The Commission incorrectly imposed the burden of proof upon the protestants."
"Point III.
"The Commission departed from the decisional precedents in granting United irregular route operating authority."
"Point IV.
"The certificate should not have been issued to United because there was a violation of Section 5 of the Interstate Commerce Act."
"Point V.
"There will be dual operations directly in violation of Section 210 of the Interstate Commerce Act, Part II."
Such points will be considered in the order stated.

I.
Sloan challenges the sufficiency of the evidence to support the Commission's finding that present and future public convenience and necessity requires UPS' proposed service. The findings relating to UPS' ability, willingness and fitness to perform the service are not challenged. The rules relating to the scope of judicial review of the Commission's findings are well established and are not in dispute. The Interstate Commerce Act in general, and § 207 thereof49 U.S.C.A. § 307[1]in particular, give the Commission a broad grant of authority to pass upon present and future public convenience and necessity. Orders of the Commission based upon adequate findings and supported by substantial evidence cannot be upset. United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 535-536, 66 S.Ct. 687, 90 L.Ed. 821; Convoy Co. v. United States, D.C.Ore., 200 F.Supp. 10, 12-13.
In Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286-287, 54 S.Ct. 692, 693, 78 L.Ed. 1260, the court states: "The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body."
UPS' application was heard by Hearing Examiner Lawrence A. Van Dyke, Jr. After hearing 193 public witnesses, the calling of public witnesses was discontinued by the examiner upon the basis that additional testimony by such witnesses would be only cumulative. The record consists of 6391 pages and 402 exhibits. The examiner, in a 48 page report, makes a detailed analysis of the evidence, makes findings, discusses the legal issues, and makes a determination that the present and future public convenience and necessity require the operation proposed by UPS. Sloan, among others, participated in the hearing and filed exceptions to the examiner's report. The Commission, after due consideration, found the exceptions filed to be without merit and approved, affirmed and adopted the examiner's statement of facts, conclusions and findings, and authorized the issuance of the certificate as recommended by the examiner. Petition for reconsideration was denied on December 7, 1961. The certificate authorized by the order was issued to UPS on January 18, 1962.
Sloan, although conceding that the examiner made the essential ultimate findings in statutory language, urges, "In this case, there is no rational support, in terms of adequate basic findings, for the conclusions which the Examiner cast in statutory language *570 The fact is that the basic findings which were made were not supported by substantial evidence of record."
Sloan stresses that there is no express finding of inadequacy of the existing service. Sloan concedes that the absence of such finding does not invalidate an order of the Commission. See Convoy Co. v. United States, supra; A. B. & C. Motor Transp. Co. v. United States, D.C.Mass., 69 F.Supp. 166, 169.
Sloan argues "the fact that a finding of inadequacy is not required, does not justify a new Certificate when service within a given territory is adequate and the Commission cannot disregard the existence of adequate service." It would seem obvious that if a finding of inadequacy of service is not required, evidence to support such a finding should not be a prerequisite to the Commission's right to grant the certificate. 49 U.S.C.A. § 307 expressly provides that the issuance of a certificate does not confer any proprietary interest in the use of the public highways upon the certificate holder. Doubtless the adequacy of existing service is a factor which the Commission should consider in determining whether any authority should be granted. The record before us reflects the examiner and the Commission gave full consideration to the available existing service.
Sloan also complains about the examiner's determination that Sloan's business would not be seriously adversely affected. The examiner's report includes the following:
"Sloan's is engaged in the household moving and storage business, general hauling, and parcel delivery service. In 1959 carrier had operating revenues of $948,592, of which about 50 percent was obtained from its parcel delivery business. A survey during a 10-day period from June 20 through July 1, 1960, disclosed that 25,878 packages were transported in both intrastate and interstate commerce, of which only 3,594, or about 14 percent of all packages surveyed, were transported in interstate commerce in the wholesale type of serviced proposed herein. Only a very small part of Sloan's overall traffic is exposed to diversion to applicant and such exposure is with respect to a type of traffic as to which Sloan's has demonstrated an ability to withstand applicant's competition in intrastate commerce and in the St. Louis Commercial Zone. As seen, even with the authority recently granted, this carrier can only transport packages between St. Louis, on the one hand, and, on the other, very limited areas in Missouri and Illinois. Because of the territorial limitations in its authority, Sloan's cannot provide the complete service which is proposed by applicant and shown to be needed. All factors considered, it is concluded that the evidence submitted by Sloan's does not warrant a partial denial of the application."
While the evidence as to the extent of the likely diversion of Sloan's small parcel business by the proposed UPS service is conflicting, we cannot say that the Commission failed to give this aspect of the case full consideration.
Sloan's territory extended only approximately 75 miles out from St. Louis. UPS proposed to furnish direct service to a much larger territory. There is substantial evidence to the effect that much of UPS' contemplated business would be derived from shippers using parcel post service which service they found to be unsatisfactory. In disposing of a similar contention, the court in the Yale Transport case, supra, states:
"Of course, no two cases of this sort are exactly alike and the present record does appear to contain a more impressive showing of the service being offered by presently certificated carriers than did that in the Chicago case. [68 M.C.C. 199] Nevertheless, any differences in the evidence as to the value of UPS' service, the availability of other service, and diversion, are not sufficient to take the case out of the area committed to *571 the Commission's judgment." 185 F.Supp. 101.
The validity of the certificate here under attack was upheld in Railway Express Agency, Inc. v. United States, D.C. S.D.N.Y., 205 F.Supp. 831. In that case, the certificate here involved was attacked by Railway Express Agency (hereinafter called REA). Sloan was not a party to that case and is not bound by the result. There are also factual differences between Sloan's position and that of REA. In the cited case, competition existed in a much larger geographical area. Nevertheless, said decision substantially supports the Commission's determination on the public convenience and necessity issue.
We cannot, within the proper limits of an opinion, adequately discuss all the extensive material evidence bearing upon public convenience and necessity. Our examination of the record satisfies us that the essential findings made by the examiner and adopted by the Commission are supported by substantial evidence and that such findings support the Commission's order authorizing the certificate.

II.
Sloan asserts that the Commission erroneously placed the burden of proof upon it to establish that present and future public convenience and necessity does not require the proposed service. We fully agree with Sloan's view that the burden of proof rests upon the applicant to establish public convenience and necessity. We are satisfied that the decision of the examiner and the Commission was not induced by any erroneous view of the law relating to burden of proof. Sloan bases its contention upon the isolated statement in the examiner's report reading, "All factors considered, it is concluded that the evidence submitted by Sloan's does not warrant a partial denial of the application." This sentence is a part of the excerpt of the examiner's report set out in Division I. The sentence says nothing expressly about burden of proof. When this sentence is read in context and in the light of the report as a whole, it is perfectly clear that the burden of proof is not placed upon Sloan. It would appear that the examiner was merely saying in substance that the evidence offered by Sloan did not overcome the showing made by UPS upon the existence of a need for its service.

III.
We find no basis for reversal in Sloan's contention that the Commission departed from its decisional precedents in granting UPS irregular route operating authority. It is by no means certain that the Commission departed from its precedents. In any event, a court on review is not concerned with the consistency or inconsistency of the Commission's decisions. Virginian Ry. Co. v. United States, 272 U.S. 658, 665-666, 47 S.Ct. 222, 71 L.Ed. 463; Western Paper Makers' Chemical Co. v. United States, 271 U.S. 268, 271, 46 S.Ct. 500, 70 L.Ed. 941; Ace Lines, Inc. v. United States, D.C.S.D.Iowa, 197 F.Supp. 591, 599.
More importantly, substantially the same issue was raised by REA in its attack upon the identical certificate here involved in Railway Express Agency, Inc. v. United States, supra. Judge Friendly in that case adequately demonstrates that the Commission acted within its statutory authority and committed no error in issuing the certificate here before us Among other things, he states:
"However, we read § 208 of the Motor Carrier Act as authorizing but not requiring the Commission to limit a freight carrier to `specified routes'; it says, quite specifically, that if operations are `not over specified routes or between fixed termini', it is enough for the Commission to name `the territory within which, the motor carrier is authorized to operate.'
* * * * * *
"The Commission, and the industry, knew what service UPS proposed, and the Commission, in granting the application, must have *572 intended to issue a certificate permitting what UPS, had asked and for which, as the Commission found, it had proved public convenience and necessity and fitness, willingness and ability. So far as the statute goes, the Commission could have issued a certificate permitting exactly that and saying nothing more; if it chose to baptize the document with a title from its catalogue which it thought closest to being apt, no legal rights of REA are violated if the fit be not altogether precise." 205 F. Supp. 836, 837, 838.

IV.
Sloan asserts that United Parcel Service of America, Inc., the parent corporation which owns all of the stock of UPS, and other carriers in the United Parcel Service family, should all have been made parties in the instant application and that the Commission's approval of the corporate control membership involved should have been sought pursuant to 49 U.S.C.A. § 5(2), and that the failure so to do is a bar to the issuance of the certificate here under attack. We agree with the contention of the Commission and UPS that the unlawful control issue was not adequately raised before the examiner or the Commission by appropriate pleading, briefs, exceptions or otherwise. All that Sloan's reference to the raising of this issue shows is that Sloan's counsel started to question a UPS witness as to whether § 5 proceedings had been instituted, whereupon UPS counsel conceded that the parent corporation had not filed a § 5 application. Discussion between counsel revealed that the violation of § 5 was in issue in the Yale Transport case, supra, whereupon Sloan's counsel stated, "Depending upon the outcome of that case, the issue might become more or less material in this case." Neither the examiner nor the Commission discussed the unlawful control issue. In United States v. L. A. Tucker Truck Lines, Inc., 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54, the court states:
"Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."
See Southern Kansas Greyhound Lines, Inc. v. United States, D.C.W.D.Mo., 134 F.Supp. 502, 510-511.
We are satisfied that the unlawful control issue was not properly raised before the Commission and hence we decline to consider such issue except to the limited extent of determining Sloan's contention that the Commission lacked jurisdiction to grant the certificate. Sloan contends that conformity with § 5 relating to control proceedings is a prerequisite to the granting of a certificate under § 307. This argument is premised on the words of § 307 requiring the applicant "to conform to the provisions of this chapter." Section 307 is part of Part II of the Interstate Commerce Act and likewise a part of Chapter 8. Section 5 is found in Part I of the Act and in Chapter 1. Obviously § 5 is not a part of the division or chapter containing § 307. Thus, it is clear § 307 does not specifically require an applicant under § 307 to conform to § 5, nor can such requirement be fairly implied.
In American Trucking Ass'ns, Inc. v. United States, 355 U.S. 141, 78 S.Ct. 165, 2 L.Ed.2d 158 plaintiff, a rail owned carrier, was unable to obtain approval under § 5(2) (b). Plaintiff then sought a certificate under § 307, which certificate was granted and upheld. The Supreme Court, in holding that § 5 does not limit § 307, states:
"The legislative history of the Motor Carrier Act of 1935 gives no indication that § 213(a) (1), the predecessor of § 5(2) (b), was to be considered a limitation on applications under § 207.

*573 * * * * * *
"In interpreting § 207, the Commission has accepted the policy of § 5(2) (b) as a guiding light, not as a rigid limitation.
* * * * * *
"We conclude, therefore, that the Congress did not intend the rigid requirement of § 5(2) (b) to be considered as a limitation on certificates under § 207 [49 U.S.C.A. § 307.]."
We hold that Sloan's contention that § 5 limits the Commission's jurisdiction to grant a certificate under § 307 is without merit.
Inasmuch as we have held that the unlawful control issue to the extent that it goes beyond the jurisdictional issue is not properly before us, we express no opinion thereon. But see Yale Transport Corp. v. United States, supra, and Yale Transport Corp. v. United Parcel Service, MC-F-7321 (dismissing the § 5(7) proceedings).

V.
Sloan's attack upon the certificate upon the ground that the dual operation it authorizes violates 49 U.S.C.A. § 310 is without merit. It is true that UPS served as a contract carrier for retail delivery service to a limited extent in Cincinnati. The Commission recognized this situation and gave it full consideration. It imposed conditions and reserved the right to impose additional conditions to protect the public interest and guard against any discrimination that might result from dual operation.
Title 49 U.S.C.A. § 310, relating to dual operation, permits the Commission, for good cause shown upon a finding that both contract and common carrier service may be held consistently with the public interest and in the national transportation policy, to authorize dual operation. The appropriate finding, backed by evidentiary support, was here made. The situation and the conditions here imposed resemble closely those existing in Yale Transport, supra, where the dual operation was approved.
We conclude that there was a factual and legal basis for the Commission's order and the certificate issued pursuant thereto, that Sloan has not demonstrated that the Commission committed any error in issuing the certificate, and that accordingly Sloan's complaint must be dismissed.
This memorandum opinion shall constitute the court's findings of fact and conclusions of law, pursuant to the provisions of Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A.
IT IS ORDERED AND ADJUDGED that the relief prayed for in the complaint be denied and that the complaint be and it is hereby dismissed.
NOTES
[1] In referring to the provisions of the Interstate Commerce Act, we will use the section numbering as found in 49 U.S.C. and 49 U.S.C.A.