**NASHUA MOTOR EXPRESS, INC.,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant,

and

Interstate Commerce Commission,
Intervening Defendant.

Civ. A. No. 2409.

United States District Court
D. New Hampshire.

April 30, 1964.

**648**

McLane, Carleton, Graf, Greene & Brown, Arthur A. Greene, Jr., Manchester, N. H., Foley, Hoag & Eliot, Loyd M. Starrett, Mary E. Kelley, Boston, Mass., for plaintiff.

Louis M. Janelle, U. S. Atty., Concord, N. H., Francis A. Silver, Assoc. Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for defendant.

Before HARTIGAN, Circuit Judge, and SWEENEY and CONNOR, District Judges.

CONNOR, District Judge.

Plaintiff brings this suit pursuant to 49 U.S.C. §§ 17(9) and 305(g), and 5 U.S.C. § 1009, to annul, enjoin, and set aside certain orders of the Interstate Commerce Commission denying both its petition for modification of its grandfather certificate to include various extended operations, and its application for certification of said extended operations on the basis of public convenience and necessity. Jurisdiction and venue are founded on 28 U.S.C. §§ 1336 and 1398. A three-judge district court has been convened pursuant to 28 U.S.C. chs. 155 and 157.

The precise facts of the case are not at all clear. They are nowhere fully set forth in the reports of the Commission made a part of the record herein; and, as the evidence before the Commission has not been laid before us, it is not the function of this court on review to make findings of fact here. In order to indicate the nature of the controversy, however, we refer to so much of the allegation in plaintiff's complaint as appears pertinent.

Plaintiff alleges that it holds a certificate of public convenience and necessity which was originally issued to plaintiff's predecessor, Philip Michael, pursuant to the "grandfather" provision now contained in 49 U.S.C. § 306(a) (1). Michael, a Greek immigrant whose formal education ended in the grammar schools of Greece, had founded a small trucking business in 1921 and carried on this operation under the name "Nashua Motor Express." He received assistance from his wife, Carrie, who can neither read nor write, and later from his daughters, who did office work as teenagers.

Plaintiff further alleges that by June 1, 1935, Michael was operating six trucks carrying general commodities on a regular basis between Boston, Massachusetts, Manchester and Nashua, New Hampshire, and points as far north as Laconia and Lakeport, New Hampshire. Early in 1936, Michael applied for a grandfather certificate with respect to the routes described. The grandfather certificate was not issued until March, 1942, and, when issued, it granted the requested authority as between the Boston and Manchester areas, but restricted deliveries north of Nashua to a limited number of commodities and to irregular routes.

Plaintiff further alleges that Michael handled all dealings with the Commission without the advice of counsel and that there is no indication either that anyone apprised him of the differences between the authority to which he was entitled and the certificate which he received, or that he himself was aware of these differences. Michael never raised any protest or question with respect to the certificate, but, rather, continued openly and consistently to advertise and perform his services as he had prior to the issuance of the certificate. His right so to operate was never challenged either by the Commission or by any of his numerous competitors.

Plaintiff further alleges that, upon the death of Philip Michael in 1952, his

widow, Carrie, who can neither read nor write, carried on the business until the incorporation of the plaintiff in 1953. Since that time, Carrie Michael has been the majority stockholder and assistant treasurer of the plaintiff. Her daughter, Alpy, is a stockholder and is its treasurer and clerk. Alpy's husband, George A. Juris, is plaintiff's president and general manager. Joseph Descoteaux, who began as a driver for Philip Michael in 1936, was the owner of the remainder of plaintiff's stock and served as its vice-president until his death in April, 1963, after which his stock was redeemed by the plaintiff.

Plaintiff further alleges that there was transferred to the incorporated plaintiff the operating authority of Philip Michael, and that, consequently, the Commission in 1953 caused to be issued in the name of the plaintiff a certificate of public convenience and necessity embracing that authority. From 1953 to 1960, plaintiff conducted essentially the same operations as had been conducted prior to Philip Michael's death. Volume continued to increase. Throughout the period from 1942 to 1960, about one-third of all shipments handled were general commodity shipments over regular routes north of Manchester, i. e., shipments as to which the 1942 certificate had granted only limited authority over irregular routes. Yet, until near the end of 1960, no suggestion was made to the plaintiff that these latter shipments exceeded the authority originally conferred in the 1942 certificate. In November or December of 1960, however, a representative of the Commission did so advise the plaintiff. Plaintiff retained counsel, and, pending the advice of counsel, suspended temporarily its service north of Manchester. Counsel then filed the two pleadings which initiated the proceedings before the Commission, and advised the plaintiff to resume the suspended operations. Plaintiff did resume said operations and was continuing to so operate at the time the present complaint was filed in this court.

Turning from the allegations of plaintiff's complaint to the record before us, it appears that, on April 12, 1961, counsel for plaintiff instituted two proceedings before the Commission. The first, hereinafter referred to as the petition proceeding, was a petition to reopen and reconsider the proceeding on Philip Michael's application for his grandfather certificate, and to modify the grandfather rights to include the routes and services disputed herein. The second, hereinafter referred to as the application proceeding, was an application for the same disputed rights on the grounds of public convenience and necessity, as if they were new services. The application proceeding was referred to Joint Board No. 186, which held hearings at Concord, New Hampshire, in late July, 1961, and served its recommended report and order on October 2, 1961. On March 12, 1962, the Commission directed that both the application proceeding and the petition proceeding be consolidated for decision by Division 1 on the record made by Joint Board No. 186 in the application proceeding. The report of Joint Board No. 186 found, among other things, that plaintiff's services (here in dispute) with respect to certain shippers were "satisfactory," "very satisfactory," or "superior," and that "such operations were conducted under a misapprehension as to the scope of applicant's certificate," and "do not appear to have been wilful." The Board recommended the granting of the application on the grounds of public convenience and necessity. Division 1 found the Board's statement of facts to be "correct in all material respects," and, with certain supplementation, adopted it as its own. Division 1 declined to follow the recommendation of the Board, however, and concluded that the application must be denied "since no inadequacy was shown in protestants' services," and that the petition must likewise be denied for lack of bona fide operation since prior to June 1, 1935. The Commission formally denied both the petition and the application in an order dated December 14, 1962.

Plaintiff's petition for reconsideration was denied by an order of the Commission dated May 13, 1963.

Plaintiff seeks review of these two orders on the ground that certain findings in the report and order of December 14, 1962, are arbitrary, unreasonable, and contrary to law. At the outset, it should be noted that it is not the proper function of this court on review to substitute its judgment for that of the Commission on matters of fact or even upon such mixed questions of fact and law as may have been committed by law to agency discretion. Nor are findings of fact by the Commission to be disturbed if based upon substantial evidence. On the other hand, this court is bound to inquire into every aspect of the proceedings below wherein it may appear that the Commission has otherwise applied an erroneous standard of law, or has made arbitrary findings, or has reached ultimate conclusions without adequate subordinate findings, or has failed in any other way to observe those procedures of investigation and elaboration which have become the hallmarks of proper administrative determination.

We turn first to the Commission's disposition of the petition proceeding.

Division 1 denied plaintiff's petition for modification of the grandfather certificate to include the services alleged to have been performed continuously since prior to June 1, 1935, because it was "unable to find that such operations have been bona fide since that time." 92 M.C.C. 642, 649. The factor which Division 1 considered to be dispositive of the issue of bona fide operation was the reading of the grandfather certificate by the plaintiff. Division 1 rendered its decision in alternative form and found an absence of bona fide operation under either alternative:

> "If read, the involved operations could only have been conducted in wilfull violation of section 206(a) (1) or section 209(a) (1) of the act. If not read, the involved operations could hardly be considered

to have been performed in good faith." 92 M.C.C. at 650.

We find this alternative disposition by Division 1 inadequate in three respects. The first objection is that Division 1 has failed to make adequate subsidiary findings. It nowhere makes a finding that the plaintiff did or did not read the certificate. Consequent upon the failure to make a finding as to this basic fact, there follows the failure to elaborate the reasons why this basic fact, *taken together with the other concrete circumstances of the present case,* supports a finding that the present plaintiff failed to establish a bona fide operation. To be sure, the report of Division 1 is rife with such expressions as "good cause has not been shown"; "absolutely no excuse has been given"; and "there is no possible way." But after making these peripheral pronouncements, Division 1 leaps to its hypothetical alternative disposition of the issue without making the requisite subordinate findings as to what actually did happen in this case and why the concrete circumstances of this case support the legal conclusion that bona fide operation was lacking. In short, this court is at a loss to know just what the Commission has found or how the Commission has reasoned on the basis of its findings. At least for this reason, the court cannot give its seal of approval to the Commission's disposition of the matter.

But there are two further objectionable aspects of the Commission's treatment of the petition proceeding. Since each concerns the concept of "bona fide operation" as used in 49 U.S.C. § 306(a) (1), some attention must be given to the elements which may be considered to constitute a bona fide operation. The test of a bona fide operation is neither a wholly objective one nor a wholly subjective one. "Bona fide operation" is not a term which is completely convertible with the concept of "good faith," as the latter might be understood in other contexts. In providing for grandfather rights under 49 U.S.C. § 306(a) (1), it was the intent of Congress to

effect a substantial parity between future operations and prior bona fide operations. United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971 (1942). One of the criteria of such a prior bona fide operation is an objective one; the service in question must have been an actual, real, physical, substantial one, and not merely a proposed or offered one. United States v. Carolina Freight Carriers Corp., supra. Another criterion of bona fide operation is subjective; the operation must not have been one in defiance of law. McDonald v. Thompson, 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. 164 (1938).

■■ These two elements of a bona fide operation are fairly easy to identify. There is a large gray area, however, wherein it cannot be so easily determined whether a certain factor or attitude will or will not vitiate bona fide operation. For example, mere infraction of state law, without defiance, may be weighed as a factor relevant to the determination of a bona fide operation; this presents an issue of fact, or a mixed question of fact and law, for the Commission to decide, and does not automatically compel a finding one way or the other. Alton R. R. Co. v. United States, 315 U.S. 15, 62 S.Ct. 432, 86 L.Ed. 586 (1942). Petitions for modification of a grandfather certificate present a perhaps more appropriate example. The gist of a successful petitioner's case must be to establish that he is entitled to an enlargement of his certificate precisely because he has, in effect, exceeded the authority of that certificate continuously from and before the date of issuance. The fact of such consistent violation alone is not sufficient to vitiate bona fide operation.

With these considerations in mind, it is not inappropriate to observe that the present case probably falls into this gray area where factors are to be weighed and conclusions reached with specificity, and where automatic conclusions are to be eschewed.

■ The second and third objections to the Commission's action relate to the two horns of the dilemma within which the plaintiff is sought to be contained. The first horn of the dilemma is that if the plaintiff did not read his certificate, he is lacking in bona fide operation. Division 1 appears to insist upon a one to one correlation between the concepts of "bona fide operation" and "good faith," and specifically rules that "good faith operations require, at least, that authority issued be read." 92 M.C.C. at 650. With this ruling, we take exception. Not only have we found no support for such an exclusive rule in any of the reported cases, but we also feel that such a rule goes beyond the elements of common sense and validity which are contained therein by arbitrarily excluding from the realm of bona fide operations various unusual and marginal cases of which the present case may well be one. We find the ruling of Division 1 to be an erroneous statement of the law and to be an inadequate substitute for actual findings as to whether the plaintiff and its predecessors failed to read the certificate and whether the circumstances were such as preclude the establishment of a bona fide operation.

■ The third objection relates to the second horn of the dilemma propounded by the Commission: "If read, the involved operations could only have been conducted in wilfull violation of section 206(a) (1) or section 209(a) (1) of the act." 92 M.C.C. at 650. As discussed above, Division 1 nowhere specifically finds that the plaintiff did read his certificate; consequent upon this is a failure to elaborate upon the reasoned relation between the hypothetical reading of the certificate, the other concrete circumstances of the case, and the ultimate conclusion that the plaintiff was in bad faith. But, beyond this is the fact that the second alternative conclusion of Division 1 flies in the face of a specific finding of fact by Joint Board No. 186, whose statement of facts Division 1 found "correct in all material aspects," and, with exceptions not here relevant, "otherwise adopt[ed] * * * as supplemented herein, as [its] * * *

own." 92 M.C.C. at 645. Joint Board No. 186 found that the plaintiff's operations

> "do not appear to have been wilful and are not necessarily a bar to a grant of authority herein. The record shows that such operations were conducted under a misapprehension as to the scope of applicant's certificate. It has been conducted openly and we do not believe that it should be considered as rendering applicant unfit to receive a certificate authorizing the operations described in the findings." No. MC–33807 (Sub.–No. 1), Report of Joint Board No. 186, p. 7.

From this, we must conclude at best that it is not at all clear what the Commission has purported to find, or, at worst, that the finding embodied in the second horn of the dilemma is wholly arbitrary.

For these three reasons, then, the orders of the Commission with respect to the petition must be vacated and the cause remanded to the Commission for further proceedings in accordance with this opinion.

The Commission disposed of the application proceeding with one sentence.

> "Since no inadequacy was shown in protestants' services, it is clear that the application must be denied, and we therefore shall confine our discussion to the issue of whether or not petitioner's 'grandfather' certificate should be modified." 92 M.C.C. at 645–46.

Plaintiff takes exception to this ruling on the ground that the Commission has erroneously ruled as a matter of law that a showing of inadequacy of protestants' services is a prerequisite to the granting of a certificate of public convenience and necessity. We find the plaintiff's position meritorious, although it is not without its difficulties.

At the outset, we are faced with a question of semantics with respect to the Commission's use of the expression "showing of inadequacy in protestants' services." It is conceivable that the Commission intended by this to refer to the totality of the elements which in combination go to make up the broad notion of public convenience and necessity. If this were, in fact, the intention of the Commission, we would, perhaps, find their statement of the law to be unexceptionable.

■ However, the relatively numerous cases decided in this area offer ample and convincing testimony to the effect that such expressions as "showing of inadequacy of protestants' services" have customarily been used in the far narrower and more particular sense which the words themselves denote. These cases show that inadequacy of present service is not a term which is convertible with that of public convenience and necessity, but is, rather, only one element to be considered in arriving at the broader determination of public convenience and necessity. Indeed, the very issue in much of this litigation has been how much significance to attach to that one element. Other elements of importance appear to be the desirability of competition, the desirability of different kinds of service, and the desirability of improved service.

■ Thus faced with the question of which of two possible constructions to place upon the words of the Commission, we conclude that it is more probable that the Commission intended the narrower customary interpretation we have just described. This being the case, we understand the Commission to have thereby enunciated a rule of law to the effect that a showing of inadequacy of the present service of protestants is an element indispensable to the ultimate finding of public convenience and necessity of proposed (or existing) service. While there is some authority for this view, e. g., Hudson Transit Lines, Inc. v. United States, 82 F.Supp. 153 (D.C. S.D.N.Y.1948), aff'd 338 U.S. 802, 70 S.Ct. 59, 94 L.Ed. 485 (1949), we feel that the better rule is embodied in the more numerous cases to the contrary.

It has been held repeatedly that in issuing a certificate of public convenience and necessity, the I.C.C. need not make a specific finding that present service is inadequate. Sloan's Moving & Storage Co. v. United States, 208 F.Supp. 567 (D.C.E.D.Mo.1962); Convoy Co. v. United States, 200 F.Supp. 10 (D.C.Or.1961); Burlington Truck Lines, Inc. v. I.C.C., 194 F.Supp. 31 (D.C.S.D. Ill.1961), rev'd on other grounds, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962); Associated Transports, Inc. v. United States, 169 F.Supp. 769 (D.C. E.D.Mo.1958); Dance Freight Lines, Inc. v. United States, 149 F.Supp. 367 (D.C.E.D.Ky.1957); Southern Kansas Greyhound Lines, Inc. v. United States, 134 F.Supp. 502 (D.C.W.D.Mo.1955); St. Johnsbury Trucking Co. v. United States, 99 F.Supp. 977 (D.C.Vt.1951); Norfolk Southern Bus Corp. v. United States, 96 F.Supp. 756 (D.C.E.D.Va.1950), aff'd, 340 U.S. 802, 71 S.Ct. 68, 95 L.Ed. 590 (1950); C. E. Hall & Sons, Inc. v. United States, 88 F.Supp. 596 (D.C.Mass.1950); Lang Transp. Corp. v. United States, 75 F.Supp. 915 (D.C.S.D.Calif.1948); A. B. & C. Motor Transp. Co. v. United States, 69 F.Supp. 166 (D.C.Mass.1946). The converse of this proposition is that the absence of a finding of inadequacy is not alone sufficient to bar the issuance of a certificate when other factors justify a finding of public convenience and necessity. The element of inadequacy is thus not a controlling one, but is to be considered along with the other factors mentioned above. Even apart from the cases cited, it appears to be the more reasonable view that the narrower conceptual element of inadequacy of present service was not intended to be imposed as a strait jacket upon the process of determining the broader interests of public convenience and necessity in the effectuation of the National Transportation Policy. We find nothing in the broader discussion of this policy which would urge a contrary view. See, e. g.,

Schaffer Transportation Co. v. United States, 355 U.S. 83, 87–93, 78 S.Ct. 173, 2 L.Ed.2d 117 (1957); I.C.C. v. Parker, 326 U.S. 60, 66–70, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945).

Plaintiff further assails the Commission's disposition of the application proceeding as being arbitrary. Without feeling the need to pass upon the merits of plaintiff's allegation at this time, we must confess that we are again at a loss to comprehend the basis upon which Division 1 proceeded. In one summary sentence, the application has been denied for failure to show "inadequacy * * * in protestants' services." But presently existing service includes the disputed service by the applicant. By what hypothetical process of subtraction has Division 1 reached its conclusion that protestants' services *would* be adequate in the absence of those disputed services presently performed by the plaintiff applicant? And how does Division 1 reconcile its finding that "no inadequacy was shown," with the findings of Joint Board No. 186 (which Division 1 purports to adopt) characterizing plaintiff's services with respect to several shippers as "advantageous," "satisfactory," "very satisfactory," "needed," and "superior to that of other carriers"? We do not press these questions further at this time inasmuch as we have already concluded that the application proceeding must, in any event, be remanded because of the Commission's apparent announcement of the erroneous standard of law to the effect that a showing of present inadequacy of protestants' services is indispensable to the issuance of a certificate of public convenience and necessity.

It is hereby ordered that the Commission's orders of December 14, 1962, and May 13, 1963, be vacated and that both the petition and the application be remanded to the Commission for further proceedings in conformity with this opinion.