**INTERSTATE BUSSES CORPORATION,**
**Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission,**
**Defendants,**

and

**Western Massachusetts Bus Lines, Inc.,**
**Intervenor.**

**Civ. A. No. 66–464.**

United States District Court
D. Massachusetts.

Oct. 20, 1966.

Frank Daniels, Boston, Mass., J. G. Dail, Jr., Washington, D. C., for plaintiff.

James J. Landers, Springfield, Mass., for defendant.

Jerome Nelson, Washington, D. C., for Interstate Commerce Commission.

## OPINION

Before COFFIN, Circuit Judge, WYZANSKI, Chief Judge, District Court, and JULIAN, District Judge.

PER CURIAM.

This is an action to set aside the January 21, 1966 order of the Interstate Commerce Commission, by Division 1, granting to Western Massachusetts Bus Lines a certificate of public convenience and necessity. Plaintiff is Interstate Busses Corporation, which was admitted before the ICC as a protestant with respect to Western's application for the certificate. Jurisdiction of this Court rests on 28 U.S.C. § 1336, 1398 and 49 U.S.C. § 305(g). The principal question raised is whether there is substantial evidence supporting the ICC's grant of the certificate.

January 13, 1965, pursuant to § 207(a) of the Interstate Commerce Act, 49 U.S.C. § 307(a), Western filed application with the ICC for a certificate authorizing it to operate in interstate commerce, as a common carrier by motor vehicle, over regular routes, in the transportation of passengers and their luggage, and express and newspapers, in the same vehicle with passengers between Northampton and Williamsburg, Massachusetts, serving the intermediate stops of Florence and Leeds, both being parts of Northampton, and Haydenville, being part of Williamsburg. Interstate Busses Corporation filed a protest. The ICC referred the case to a Joint Board for hearing.

At that hearing testimony was given by Joseph Maddaloni, Western's general manager, William P. Hurley, chief of recreation of The Veterans Administration Hospital at Leeds, James Hutchins, one of the owners of a restaurant in Williamsburg, and George M. Sage, president of the protestant Interstate.

On the view of the evidence most favorable to Western the following facts appeared.

Western for a long time had licenses from the Commonwealth of Massachusetts authorizing purely intrastate carriage over the 9 mile route between Williamsburg and Northampton, including as intermediate points Florence, Leeds, and Haydenville. It had established a regular passenger service of 8 scheduled round trips daily. In its application and supporting testimony, Western proposed not to change its route, or increase its number of trips, or alter the physical characteristics of its transportation, but to afford passengers making interstate journeys beginning or ending at points along Western's route the convenience of "through" travel tickets covering the whole transportation.

Western had arranged for through transportation and through tickets with Peter Pan Bus Line, which has interstate service south from Northampton, and Vermont Transit Company, which has interstate service north from Northampton.

On the issue as to whether such service would be convenient and necessary, Maddaloni, Western's general manager, testified as to hearsay statements of company agents reporting requests for information about interstate travel beyond Northampton. Hutchins, the Williamsburg restaurant owner, testified that patrons had inquired about interstate buses and their schedules. The most detailed testimony came from William P. Hurley, chief of recreation of the Veterans Administration Hospital at Leeds, who was

authorized to appear on its behalf. His official duties required him to discuss with patients the transportation needs of themselves and their visitors. He showed that in a typical year about 60% of the patients were from homes outside the state. He indicated that some outpatients, some post-hospitalization patients, and some visitors also came from outside the state. Hurley knew that some of the out-of-state patients wanted bus transportation. He did not estimate the number. It was his informed opinion that the proposed Western service would be a convenience, because if it were permitted, the hospital would arrange for its personnel to sell through tickets, and would have information as to schedules of transportation on connecting lines.

The only existing authorized interstate service covering the points involved in Western's proposal is furnished by Interstate Busses Corporation. Its present schedule offers only one trip weekly—a Sunday trip northbound from Northampton. George M. Sage, president of Interstate, testified that his company would be prepared to offer more frequent schedules, as it did in the nineteen fifties, if there were a public demand. However, in referring to a public demand, Mr. Sage obviously did not imply that the potential interstate traffic to or from points on the route from Williamsburg to Northampton disclosed by this record was sufficient to justify Interstate in providing a more frequent purely interstate service. The disclosed demand, however, is sufficient to interest Western, which already is carrying passengers along this route pursuant to its intrastate authority.

Upon the foregoing evidence the Joint Board of the ICC recommended denial of Western's application. That recommendation was affirmed by Operating Rights Review Board Number 2. However, Division 1 of the ICC ordered the proceeding reopened for consideration and January 21, 1966 issued a report and order awarding the authority applied for. April 27, 1966 the ICC denied a petition for reconsideration. June 15, 1966 it issued the certificate.

The principal issue raised before this Court is whether there is substantial evidence to support the conclusion of the ICC that public convenience and necessity justify the issuance of the certificate. More sharply, the question is whether there is substantial evidence that there are sufficient potential users, passengers, or shippers, who would find Western's proposed service convenient and necessary.

■ In addressing ourselves to this issue we are mindful that the substantial evidence required to sustain a determination by an administrative agency is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126; Consolo v. Federal Maritime Com'n, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131.

The only substantial evidence that there are passengers who would use Western's proposed service comes from Hurley, who testified that it would serve the convenience of patients and visitors going to and from the Veterans Administration Hospital at Leeds.

As to the remaining evidence, we cannot say either that it was "substantial" in itself or that it added any substance to Hurley's testimony. The only testimony on this issue given by Western's manager was that Western's agents had told him that they had received requests for information to points beyond Northampton and that several drivers had reported being offered tickets which had to be refused. The remaining testimony came from a co-owner of a restaurant in Williamsburg who said he had received requests for information on bus transportation to such out-of-state destinations as Hartford, Providence, and New York City. He stated that he felt that the sale of through tickets at his restaurant would be a convenience to Williamsburg residents.

■ Conceding that it may not be feasible to require testimony from prospective passengers, we note that the above evidence is totally lacking in any specificity as to how many requests were made, how recently or how frequently they were made, or to what extent they reflected a desire to purchase a through ticket from Western. In short, while trying to be realistic, we cannot imagine testimony that could be less substantial except, perhaps, completely unsupported opinion.

Thus the record merely shows that Western's proposed transportation will be convenient for passengers whom it carries only within the corporate limits of Northampton, that is, between the hospital in the section of Northampton known as Leeds and the Northampton interstate terminals of Peter Pan Bus Line and Vermont Bus Lines.

If this is the only interstate transportation which Western is to perform, plaintiff contends that it is a service for which a certificate of convenience and necessity is neither necessary or proper because it is exempted by § 202 (c) (2) of the Interstate Commerce Act, 49 U.S.C. § 302(c) (2). That section exempts from certification "transportation by motor vehicle by any person (whether as agent or under a contractual arrangement) for a * * * [certified] motor carrier * * * in the performance within terminal areas of transfer, collection, or delivery service."

Plaintiff argues that earlier ICC cases have established that "terminal areas" of passenger carriers are the limits of municipalities which they are authorized to serve, The Greyhound Corporation—Investigation and Revocation of Certificates, 84 M.C.C. 169, 174, and that when an independent carrier performs transfer, collection, or delivery service for a certified carrier within a terminal area, a certificate should not be issued to the independent carrier because it is unnecessary and does not serve the public convenience. Hastings Common Carrier Application, 27 M.C.C. 387 (1941); New York, S. & W. R. Co. Common Carrier Application, 47 M.C.C. 713 (1946).

Western and the ICC have taken different positions on this point. The Commission in its brief before us argued that it is not precluded from considering evidence of the need for service on an exempt portion of a route in deciding whether to issue authority for the entire route. It cited cases such as A. B. & C. Motor Transp. Co. v. United States, D. Mass., 1946, 69 F.Supp. 166, 169, where evidence of prior operations carried on under color of "grandfather" rights, though without actual authority, was appropriately considered along with user testimony. Here, on our view of the record, there is no other evidence than that relating to the exempt segment, and we are not persuaded by reference alone to the "grandfather" operation analogy.

The situation is further complicated by Western's argument in its reply to plaintiff's earlier petition for reconsideration by the Commission—that the Seventh Supplemental Report of the Commission in Ex parte MC no. 37, Commercial Zones and Terminal Areas, 54 M.C.C. 615, 620, modified the findings in the Sixth Supplemental Report, 54 M.C.C. 21, 108, with the result that Western's proposed operations would not be subject to section 202(c) (2) and would not be exempt under section 203(b) (8). That plaintiff interpreted these provisions oppositely is clear from its petition for reconsideration.

■ The point which impresses us is that, while plaintiff's argument has at least plausibility, it was not presented to or considered by the ICC. When the case was before the ICC the Commission assumed that on the present record there was substantial evidence that the persons for whom Western's service would be convenient included passengers whose journeys originated or ended in Williamsburg. We have noted that this assumption was erroneous. The record, as we read it, shows no more than that Western's service will be convenient for travelers whose point of origin or of destination is Northampton. Thus, for

the first time there emerges the question as to whether a certificate of convenience and necessity is permissible when all the proposed interstate transportation as to which there is supporting evidence is to be within a terminal area of certified carriers and under arrangements with them. On this question, even if it be a question of law, we ought not to make a decision until the point is raised before and considered by the ICC.

We therefore find it necessary to set aside the order and remand the case to the ICC. However, it is not our intention to confine the ICC to considering whether on the record as it now stands § 202(c) (2) precludes the issuance of a certificate of convenience and necessity. Nothing in our remand precludes the ICC from permitting the presentation of further evidence as to the economic demand for Western to render its proposed service outside of the City of Northampton.

The January 21, 1966 order of the ICC is vacated and the case is remanded to the ICC for further action in accordance with this opinion.