**SMITH & SOLOMON TRUCKING CO.**
v.
**UNITED STATES et al.**
Civ. No. 989–53.

United States District Court,
D. New Jersey.
April 7, 1954.

James F. X. O'Brien, Newark, N. J., Kenneth J. McAuliffe, New York City, Wilmer A. Hill, Washington, D. C., for plaintiff.

William F. Tompkins, U. S. Atty., Newark, N. J., John H. D. Wigger, Special Asst. to the Atty. Gen., for the United States.

Edward M. Reidy, Chief Counsel, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

Shanley & Fisher, F. Earl Walter, Jr., Newark, N. J., Baldwin, Jarmin & Norris (William J. Little, Baltimore, Md., of counsel), for intervenors.

Before McLAUGHLIN, Circuit Judge, and SMITH and MEANEY, District Judges.

McLAUGHLIN, Circuit Judge.

This matter consists of two separate actions by a motor vehicle common carrier which were consolidated for hearing purposes.

The first of these, originally bearing the docket number 989–53, is to set aside the report and order of the Commission of April 20, 1953 and the order of the Commission of October 5, 1953 denying the plaintiff's petition for further consideration of the April 20, 1953 order.

Plaintiff, a New Jersey corporation, is the holder of a certificate of public convenience and necessity in No. MC–59264, originally issued to it by the Commission March 21, 1941. Under that certificate for about ten years, down to sometime early in 1951, plaintiff served a shipper, Clorox Chemical Company, in the transportation of sodium hypochlorite solution (a household bleach) from Jersey City to Baltimore and Washington. Shortly after the beginning of 1951 the Clorox Company, having built a new plant at Camden, New Jersey, notified the plaintiff that it intended to ship its product from Camden to Baltimore and Washington instead of from Jersey City. Plaintiff therefore on January 19, 1951 obtained temporary authority from the Commission to transport the Clorox freight from Camden to Baltimore and Washington. This was confirmed by order of the Commission of February 7, 1951 under which the authority was to expire August 4, 1951. However, by the Administrative Procedure Act, Section 9(b), 5 U.S.C.A. § 1008, the order became conditioned to remain in effect until the application for permanent authority designated as No. MC–59264 (Sub.-No. 16) "shall have been finally determined by the Agency."

On February 19, 1952, plaintiff's application as amended was denied by order of the Commission, Division 5. On reconsideration, by its Report Order of October 7, 1952, the Commission, Division 5 allowed a certificate authorizing the requested operations and set the order of February 19, 1952 aside. On April 20, 1953 the full Commission, having reconsidered the report and order of October 7, 1952, filed its report and by its order dated the same day set aside the order of October 7, 1952 and denied the application. On May 5, 1953 plaintiff filed a petition for reconsideration of and for revision of its original certificate in MC–59264 or for oral argument on that issue before the Commission. On May 27, 1953 plaintiff filed a petition for further consideration of the April 20, 1953 report. This was denied October 5, 1953. Thereafter in due course this proceeding was commenced.

Plaintiff's contention is that the Commission acted unlawfully, unreasonably, arbitrarily and capriciously in refusing its application under the Commission's "follow the traffic" doctrine. We disagree.

The so called "follow the traffic" theory is not a rigid rule automatically enforced by the Commission whenever invoked. It is a commerce principle which time and again has entered into the facts of applications to the Commission. Where this element is present, its importance depends upon the circumstances of the case. The Commission considers it together with the other evidence before it.

The chief reason urged by plaintiff that it be allowed to follow its customer is that its traffic from that source amounted to 8% of its gross business from 1948 to 1950 inclusive. The protestant carriers assert that 6.5% is the correct figure. Plaintiffs state that taking either percentage it would suffer seriously from the loss of the freight involved especially since it operates on a modest margin of profit. The Clorox account, according to plaintiff, is essential to the maintenance by it of an efficient operation. Plaintiff's claim on this phase of the case under the proofs goes no further than this. There is no showing of irreparable injury.

■■ The chief concern of the Commission, and rightly so, was to determine whether public convenience and necessity required the granting of this application. Interstate Commerce Commission v. Parker, 326 U.S. 60, 65, 65 S.Ct. 1490, 89 L.Ed. 2051; United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 241, 66 S.Ct. 75, 90 L.Ed. 38. This is the primary test under the statute and unless the application qualified under that test the Commission had no authority to allow it. We agree with plaintiff that the Commission is entitled to exercise reasonable discretion in determining whether public convenience and necessity requires a particular project. Admittedly in this instance there was and is adequate existing service in the areas contemplated by the application. The Commission, confronted with the possibly disturbing results of forcing a new and unneeded carrier into that territory, refused to ignore the rights of currently operating transportation. It is completely unrealistic to argue that there was no reasonable ground for considering plaintiff an additional carrier which, under the facts, was neither needed nor desirable. Plaintiff insists that it is solely interested in transporting the Clorox product. That may be the thought at this time but conditions change; certainly the petition of May 5, 1953 asking for the extension of the original "grandfather" certificate under which plaintiff now operates is for general carrier privileges over the same routes here requested and contains no intimation of restricting service to the named Clorox product.

■ The Commission was unable to find that public convenience and necessity required favorable action on this application. It saw no justification to deal an uncalled for blow to the motor carriers of the territory who were functioning under Commission certificates and for whom decent regard should be had. The national transportation policy which the Commission had very much in mind and which is of vital importance in any decision on the instant type of transportation problem does make it mandatory on the Commission, as the latter states, "to foster sound economic conditions in transportation." By reason of that policy itself the Commission must carefully weigh the entire relevant situation. If after that, a carrier application based on a "follow the traffic" conception is shown to be reasonably required by public convenience and necessity (which would include proper allowance for other carrier rights and for the national transportation policy) the "follow the traffic" principle invoked might very well be the determining feature in the decision as to whether the application should be granted. In this issue the Commission gave plaintiff's application

that very consideration and concluded that public convenience and necessity did not call for the granting thereof.

That holding is not incompatible with prior decisions of the Commission. In Petroleum Transportation Co. Extension—Umatilla, 19 M.C.C. 637 the special facts of that case persuaded the Commission to allow a carrier to follow its traffic as it had other carriers with similar operations. The decision helped materially to prevent unfair competitive disturbance. In Empire Express Inc. Extension—New Brunswick, N. J., 47 M.C.C. 727 a "follow the traffic" application was denied. Plaintiff seeks to construe the report there as establishing a firm precedent for its idea of the Commission view but in effect that report stands for the rule which the Commission has reiterated in its denial of the present application, namely, that where " * * * public convenience and necessity required certain motor carriers to follow their principal traffic * * * " the Commission in specific instances has allowed their applications. The Empire Express report stressed the importance of the question whether the existent facilities in "follow the traffic" applications were adequate as did the report in George F. Alger Co. Extension—Avon Lake, Ohio, 48 M.C.C. 226. In Clark Transport Co. Extension—Duluth, Minn., 53 M.C.C. 237, 244, the latest Commission expression of opinion on this problem, a "follow the traffic" application was denied primarily because of failure of proof indicating the inability or unwillingness of existing carriers to provide a proposed service, irreparable injury to applicant or that such injury would outweigh the harm a grant of authority would have upon existing carriers. That decision of the Commission was sustained in Clark Transport Co. v. United States, U.S.D.C.N.D.Ill., January 11, 1954.

The denial of plaintiff's application has ample support in the record; it was within the reasonable discretion of the Commission it was not arbitrary or capricious. The Commission by its decision is not, as asserted, reversing commerce law of the last fourteen years on "follow the traffic", nor is it destroying that principle. On the contrary it is merely restating its policy on that subject as it derives from its decisions to date.

### "Grandfather Clause" Action

Immediately following the denial of its "follow the traffic" application plaintiff, on May 5, 1953, filed a petition [1] for reconsideration of and for revision of its original certificate (as revised down to and including its latest certificate date, June 27, 1952) in MC–59264. That certificate had been issued pursuant to an application under the "grandfather" provisions of Section 206(a)(1) of the Interstate Commerce Act as amended, 49 U.S.C.A. § 306. The petition sought enlargement of the scope of the operating authority set out in the said certificate to include the right to specifically transport general commodities over irregular routes between Philadelphia, Pa. (including Camden, N. J.) and Baltimore, Md. and Washington, D. C. in connection with its other operations or for oral argument on that issue. Answers of the defendants United States and the Commission and of intervenors Interstate Common Carriers Council of Md., Inc., and Joint Northeastern Motor Carrier Assn., Inc., intervenors were thereafter filed. The Commission considered the matter on the pleadings and the record and on January 22, 1954 denied the petition. It held that the carrier " * * * has failed to establish that it was engaged in bona fide operations in the transportation of such commodities over irregular routes, between the aforesaid points, in interstate or foreign commerce, on June 1, 1935, and continuously thereafter; and that oral argument on that issue is not warranted; * * *." This suit followed and, until consolidated

---

1. The petition was amended November 17, 1953 to remove the "truck load" restriction on movements to Washington, D. C.

with No. 989–53, bore the docket Number 109–54.

■ Plaintiff argues that it was not accorded a fair and impartial hearing on its original application. In so doing more than twelve years after its certificate was granted and for the first time it attacks the procedure employed by the Commission in passing upon its application.

It criticizes the use by the Commission of one of its supervisors to investigate the application and to hold conferences regarding it. It is admitted that this was the identical method by which many of the 90,000 applications under the "grandfather clause" were processed during that period. No charge is made that the supervisor was incompetent or indeed that he was not the type of administrative specialist possessing the expert knowledge recognized as so helpful in disposing of administration problems. The main complaint seems to be that there was no Commission requirement that he be an attorney at law "qualified by training and education to ensure that the informal conferences would be conducted in orderly fashion." There is no proof at all in the record that the conferences were conducted in any other but orderly fashion.

Complaint is also made that plaintiff was not advised it could be represented by legal counsel at the conferences. Beyond question plaintiff had counsel present at several of the conferences and was assisted by him. Plaintiff insists that on all of those occasions this referred to counsel though properly a practitioner before the Commission was not an attorney at law. Assuming that to be so it would still have been plaintiff's choice. There is no contention that the Commission in any of the enormous quantity of "grandfather" applications disposed of by it ever prevented an applicant from having legal assistance.

Objection is then made to a series of compliance orders which plaintiff says whittled down its originally allowed territory.[2] Actually the territory granted in the 1941 certificate was accepted by the plaintiff with the advice of its counsel. The application as originally presented was protested by interested rail and motor carriers. There was more or less bargaining between them and the plaintiff. Eventually both sides agreed and thus avoided a formal hearing before the Commission. There is no basis in the record for plaintiff's statement that it was forced into accepting its certificate because of the "harassment, persecution" and "relentless pressure" from its adversaries.

We have examined plaintiff's other contentions concerning the hearing. They are without merit and do not need discussion.

There is nothing before us to suggest that plaintiff's application was not fully and fairly considered and decided by the Commission. The method by which the Commission handled it and many other applications of the same type has been passed upon and approved by the Supreme Court. Crescent Express Lines v. United States, 320 U.S. 401, 404, 64 S.Ct. 167, 88 L.Ed. 127. And see Gregg Cartage & Storage Co. v. United States, 316 U.S. 74, 84, 62 S.Ct. 932, 86 L.Ed. 1283.

Plaintiff also contends that it should have been allowed the additional authority requested because of the alleged pattern of its activities as revealed by the evidence in the application proceedings. For this argument it relies upon United States v. Carolina Freight Carriers Corporation, 315 U.S. 475, 62 S.Ct. 722, 86

---

2. In the complaint in this "grandfather" cause plaintiff also alleges that on February 28, 1951, it filed with the Commission a petition for further hearing in respect of: (1) Transportation of explosives for the United States Government; and (2) Interstate operations between Middlesex County, N. J. on the one hand and Essex and Hudson Counties, N. J. on the other. By Commission order of April 30, 1952 the first request of plaintiff's petition was allowed and the second request denied. Plaintiff urges that the operating authority asked for in its second request together with other additional operating authority would have been included in the compliance order of June 10, 1938 if it had become effective.

L.Ed. 971 and the Commission decision following it in Carolina Freight Carriers Corporation—Common Carrier Operation, 43 N.C.C. 221. It might be well therefore to briefly outline the scope of the parent Supreme Court Carolina opinion.

First of all (315 U.S. at page 480, 62 S.Ct. at page 725) it clearly states the necessity for a certificate applicant under 206(a) (1) of the Act to have been " 'in bona fide operation as a common carrier by motor vehicle on June 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time' ". It holds, 315 U.S. at page 480, 62 S.Ct. at page 726 that "The precise delineation of the area or the specification of localities which may be serviced has been entrusted by the Congress to the Commission." It emphasizes that the test called for by the Act is one of substantial bona fide actual operation as distinguished from incidental, sporadic or infrequent service or a mere holding out to serve a specified area. It repeats, 315 U.S. at page 481, 62 S.Ct. at page 726, what was said in Alton R. Co. v. United States, 315 U. S. 15, 22, 62 S.Ct. 432, 86 L.Ed. 586, that "the purpose of the 'grandfather clause' was to assure those to whom Congress had extended its benefits a 'substantial parity between future operations and prior bona fide operations' ". Passing on from the allowance of the certificate the court then took up the restrictions which the Commission had placed on the articles the carrier possessing a "grandfather" certificate was allowed to transport. As to those the court held, 315 U.S. at page 483, 62 S.Ct. at page 727, that where a common carrier "has carried a wide variety of general commodities, he cannot necessarily be restricted to those which he carried with more frequency and in greater quantities than the others." Continuing, the court pointed out that there might be substantial evidence of a bona fide operation as a common carrier of a large group of commodities or of a whole class of commodities though the evidence as to any one article was not substantial and held the Court, 315

U.S. at page 487, 62 S.Ct. at page 728 "Once the common carrier status * * had been established as respects those commodities, shipments to any parts of the authorized territory, or to any of the authorized points therein, should have been permitted, in the absence of evidence that the [carrier] as respects carriage between specified points had restricted its undertaking to particular commodities".

■■ The Commission's decision in the issue before us in no way conflicts with the Carolina opinion. The foundation of the latter is that the "grandfather" applicant must have been in bona fide operation as a motor vehicle common carrier on the routes or within the territory applied for on and after June 1, 1935. Here the Commission, with substantial support in the record, has found that plaintiff has failed to establish this fundamental requisite. The other problems in the Carolina litigation did not arise and could not have arisen until after the common carrier status in the requested territory had been established. They had to do with the type or classes of goods the carrier is authorized to transport over the territory previously granted him and with his servicing of any part of that territory. We never reach those questions. And there is no contradiction between the instant order and the decision of the Commission following the further hearing of the Carolina application after the opinion of the Supreme Court in the Carolina case. The Commission quite properly followed the directive of the Supreme Court in working out the factual situation involved.

■ The defendants urge affirmatively that plaintiff is guilty of laches. We think that this is glaringly apparent. For some twelve years it has operated under its original certificate. It was not until after the final denial on April 20, 1953 by the full Commission of its "follow the traffic" application that it questioned the validity of the initial procedure. Conceivably there might be some cogent reason which would justify

that sort of conduct, but plaintiff advances no such reason. Its entire defense to the charge of laches consists of the statement that "having brought its 'grandfather' application to a conclusion without advice of counsel, having failed until 1953 to enlist the aid of counsel for the purpose of inquiring into its rights under the 'grandfather' clause of Section 206(a), and being until then ignorant of the extent of its rights under that section, [it] can hardly be charged in an equitable action with laches. Patterson v. Hewitt, 195 U.S. 309, 25 S.Ct. 35, 49 L.Ed. 214. There is the further fact, as found in the case just cited, that in determining the question of laches in suits in equity, not only lapse of time but detrimental change or lack of detrimental change in the position of adverse parties is material to be considered upon the question whether the suit was brought without unreasonable delay. There has been no damaging change here in the position of the principals or in the position of the protesting truck lines or railroads."

The statement fails completely to offer any reasonable excuse for plaintiff's utter lack of diligence. It blandly ignores the possibly damaging changes of position to the defendants directly and to a large percentage of the motor vehicle common carrier industry operating under "grandfather" certificates. All of those grants would be, at the very least, subject to attack. A chaotic condition could hardly be avoided. Nor does the Patterson decision, cited as favorable to plaintiff's position, do other than clearly show its untenability. The Court there holds that fundamentally, equitable laches depends upon the circumstances of the case. In that litigation a delay of eight years was called inexcusable. In this action the circumstances indicate unmistakably that the doctrine of laches must be applied to plaintiff's twelve year delay in filing its petition.

In view of our disposition of the complaint in this cause on the grounds above discussed there is no occasion at this time for our passing upon the defense contention that this suit is barred by the statute of limitations for civil actions against the United States. 28 U.S.C. § 2401(a).

The complaints in both actions will be dismissed.

Separate Findings of Fact and Conclusions of Law in each case will be filed with this opinion.