PETROLEUM CARRIER CORPORA-
TION, Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission,
Defendants.

No. 65–379–Civ–J.

United States District Court
M. D. Florida,
Jacksonville Division.

Aug. 19, 1966.

Sack & Sack, Jacksonville, Fla., for plaintiff.

James S. Wilson, Paris, Ky., for Motor Fuel Carriers, Inc., intervenor.

Before JONES, Circuit Judge, and McRAE and YOUNG, District Judges.

## OPINION

GEORGE C. YOUNG, District Judge.

Plaintiff, Petroleum Carrier Corporation (P.C.C.), seeks judicial review of an order of the Interstate Commerce Commission granting a certificate of public convenience and necessity to Motor Fuel Carriers, Inc. (Motor Fuel) to operate as a motor common carrier to transport petroleum products, in bulk, in tank vehicles, over irregular routes, from terminals off the Colonial Pipeline at or near Bainbridge, Georgia, to particular points in Northern Florida.[1] The Commission's order affirmed and adopted the findings and recommendations of the hearing examiner.

As pertinent here, P.C.C. held sole authority to transport petroleum products interstate from Bainbridge, Georgia, to points in Florida within 175 miles of Bainbridge. Applicant, Motor Fuel,

was the only other carrier located at Bainbridge, but its interstate authority was limited to points in Alabama within 150 miles of Bainbridge. Additionally, Motor Fuel held intrastate authority to transport from certain North Florida origins to all points in Florida. In fact, Motor Fuel's principal operations were conducted from marine terminals on the Gulf coast of the Florida Panhandle. A large portion of the traffic hauled from these terminals was diverted to terminals at Albany and Bainbridge[2] on the South Georgia spur on the Colonial Pipeline, a pipeline system running from Texas to New York.[3]

The plaintiff, P.C.C., contends that Motor Fuel was certified solely in order to enable it to follow its traffic, that a finding of inadequacy of existing service was required but not made, and that no sufficient evidence was introduced to substantiate the certification.

Neither the record nor the law supports the contentions of the plaintiff. The recommendation of the examiner and the decision of the Commission in granting Motor Fuel its authority from Bainbridge was based upon considerations other than just permitting Motor Fuel to follow the traffic. Representatives for Texaco Inc., Gulf Oil Corporation, and Cities Service, Inc., testified concerning plans to divert traffic to Bainbridge which would necessarily result in increased volume of traffic from that point. Each of the shippers expressed a need for a minimum of two carriers to serve it from Bainbridge. There were three applicants for authority from Bainbridge to Florida, but the examiner recommended and the Commission decided in favor of only the application of Motor Fuel and denied the applications of the other

---

1. P.C.C. does not contest Motor Fuel's authority to serve from Albany, Georgia to Florida points, which authority was granted simultaneously with the Bainbridge grant.

2. For example, revenues derived from shipments from Panama City, Florida, during the year 1963, were 22.75% below 1959 revenues. Commission Report, No. MC–

903 (Sub. No. 35) et al., Appendix C, p. 9.

3. Rehabilitation of the pipeline resulted in major oil companies planning to change their distribution and marketing patterns by constructing and using terminal facilities on the pipeline in lieu of distribution from marine port terminals.

two applicants. In this respect the examiner said:

"Although collectively, three carriers are supported to Florida, the existing service of P.C.C. is such that only one additional carrier is warranted."

The examiner found that there was a need for two carriers from each origin point and stated:

"All major shippers expound a need for a minimum of two carriers from each origin * * * and in the examiner's opinion, the total impact of the evidence justifies this position. Accordingly, * * * a minimum of two carriers acceptable to each major shipper will be authorized from each terminal origin where no service now exists."

Inasmuch as P.C.C. already had authority from Bainbridge, the examiner recommended and the Commission authorized only one additional carrier from Bainbridge to Florida—Motor Fuel—whose authority is contested here.

The examiner rationally explained the basis for his selection of one applicant over another for identical authority as follows:

"The equity of one applicant over another for identical authority where the services of all are not justified has been determined by weighing the extent to which the present traffic of each will be diverted and the economic consequences thereof; the relative competitive standing and pattern of operations of each in the origin and destination territory involved; the quantity and quality of shipper support as it pertains to past usage; the extent of diversion and to future need; the relative quantum of service at the old and the new traffic source; and the relative ability based upon existing capacity and past performance to meet the transport needs of the supporting shippers, making due allowance for each applicant's service proposals."

■ The grant of authority to Motor Fuel did not rest solely on a "follow the traffic" basis. Smith & Solomon Trucking Company v. United States, 61 M.C.C. 748 (1953), was cited by the plaintiff in support of its position that authority grounded on "follow the traffic" is illegal. However, that case did not preclude consideration by the Commission of a carrier following its traffic through the grant of new authority provided there were other considerations justifying the additional authority. See Petroleum Carrier Corporation v. United States and Interstate Commerce Commission, 258 F.Supp. 611, decided this date by this Court.

■ There was sufficient evidence from which the Commission could, and did, logically find that there would be a substantial increase in traffic from Bainbridge to Florida points, that multiple carrier service was needed, and that competitive sharing of the rerouted traffic would be in accord with the objectives of the national transportation policy. These findings of the Commission, supported by substantial evidence, cannot be set aside by this Court. In the very recent case (decided March 22, 1966) of Consolo v. Federal Maritime Commission, 383 U. S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131, the Supreme Court has laid down some very clear and precise guidelines for judicial review of administrative agency action. In that case the Supreme Court said:

"Section 10(e) of the Administrative Procedure Act (5 U.S.C. Sec. 1009 (e) (1964 ed.)) gives a reviewing court authority to 'set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, (or) an abuse of discretion * * * (or) (5), unsupported by substantial evidence * * *.' Cf. United States v. Interstate Commerce Comm., 91 U.S.App. D.C. 178, 198 F.2d 958, 963–964, cert. denied, 344 U.S. 893 [73 S.Ct. 212, 97

L.Ed. 691]. We have defined 'substantial evidence' as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 229 [59 S.Ct. 206, 83 L.Ed. 126]. '[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300 [59 S.Ct. 501, 83 L.Ed. 660]. This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. National Labor Relations Board v. Nevada Consolidated Copper Corp., 316 U.S. 105, 106 [62 S.Ct. 960, 86 L.Ed. 1305]; Keele Hair & Scalp Specialists, Inc. v. FTC, 5 Cir., 275 F. 2d 18, 21.

Congress was very deliberate in adopting this standard of review. It frees the reviewing courts of the time-consuming and difficult task of weighing the evidence, it gives proper respect to the expertise of the administrative tribunal and it helps promote the uniform application of the statute. These policies are particularly important when a court is asked to review an agency's fashioning of discretionary relief. In this area agency determinations frequently rest upon a complex and hard-to-review mix of considerations. By giving the agency discretionary power to fashion remedies, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to min-

imize the opportunity for reviewing courts to substitute their discretion for that of the agency."

The plaintiff contends that the examiner and the Commissioner erred in failing to make an affirmative finding that the service of P.C.C. is inadequate and that such failure precludes the grant of authority to Motor Fuel. This contention is not in accord with the law; in the recently decided case of Texas Mexican Railway Co. v. United States, 250 F. Supp. 946 (1966), a three judge district court in the Southern District of Texas held:

"We agree that inadequacy of present service is certainly an element to be considered in arriving at a determination of public convenience and necessity, but not that a specific finding of inadequate service is necessary."

The I.C.C. acted within its statutory powers, its findings were supported by substantial evidence and its decision was in accord with applicable law. The Commission's order, therefore, should be approved and the complaint should be dismissed.

Appropriate judgment will be entered.

## DISSENTING OPINION

JONES, Circuit Judge, dissenting.

So far as I am aware, no serious contention has been made that Petroleum Carrier Corporation is unwilling or unable to furnish adequate service under its certificate of public convenience and necessity. The fact that one or more shippers would prefer to have more carriers qualified is not, in my opinion, adequate justification for a determination that certificates should be granted to other lines.