**FLORIDA TERMINALS & TRUCKING COMPANY, Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**Civ. No. 70-241-ORL.**

United States District Court,
M. D. Florida,
Orlando Division.

July 5, 1972.

James E. Wharton and Gregory A. Presnell, Akerman, Senterfitt, Eidson & Wharton, Orlando, Fla., for plaintiff.

Alan C. Todd, Asst. U. S. Atty., Orlando, Fla., John H. D. Wigger, Dept. of Justice, Jerome Nelson, Associate Gen. Counsel, I. C. C., Washington, D. C., for defendants.

Richard J. Brooks, Altamonte Springs, Fla., Richard B. Austin, Miami, Fla., for Orlando Cartage, Inc.

Before RONEY, Circuit Judge, and YOUNG and KRENTZMAN, District Judges.

GEORGE C. YOUNG, District Judge:

Plaintiff, Florida Terminals and Trucking Company (Florida Terminals), protestant in the proceedings before the Interstate Commerce Commission, seeks judicial review of an order of the Com-

mission granting a certificate of public convenience and necessity to Orlando Cartage, Inc. (Orlando Cartage), authorizing operation in interstate or foreign commerce, as a common carrier by motor vehicle, over irregular routes, of general commodities (except those of unusual value, classes A. and B explosives, household goods as defined by the Commission, commodities in bulk, and commodities requiring special equipment), which are at the time moving on bills of lading of freight forwarders from Orlando, Florida, to points in Orange, Lake, Marion, Volusia, Brevard, Seminole, Osceola, and Polk Counties, Florida; and to permanently enjoin and set aside the order of the Commission granting such certificate of convenience.

Application was made by Orlando Cartage in December 1967 for a certificate to handle freight forwarder traffic from Orlando to the eight surrounding Florida counties. A similar certificate was then held by George A. Dobbert, d/b/a Knollenberg's Motor Transfer (Knollenberg), which sought and received permission on March 7, 1968 to intervene before the Commission as protestant to Orlando Cartage's application. In May 1968 the Commission referred the matter of the application to modified procedure and directed all parties to submit their evidence in verified statements. Subsequently, Knollenberg's encountered financial problems culminating in the sale of the certificate of convenience held by Knollenberg's to plaintiff, Florida Terminals, on March 29, 1969. Florida Terminals then petitioned for and received temporary authority to operate over the routes and under the same limitations as specified in Knollenberg's certificate.

On May 12, 1969, the Commission referred the matter of Orlando Cartage's application to oral argument before Joint Board No. 205 [1] composed of Robert Christ, at Orlando, Florida, on June 17, 1969. On May 30, 1969, Florida Terminals petitioned for leave to intervene in opposition to the application, which leave was granted on June 13, 1969. Hearings were held before the Joint Board in Orlando on June 17, 18, 19, 20 and 30, 1969, and on August 4, 5, and 6, 1969 in Winter Park. The Joint Board recommended approval of the application of Orlando Cartage; exceptions to the Joint Board's report were filed by Florida Terminals, and subsequently the Joint Board's report was affirmed as amended as to wording, by the Review Board No. 1. A petition for reconsideration was filed and denied by Division 1 of the Commission on November 5, 1970; suit was thereafter filed in this Court for temporary and permanent injunctions seeking to set aside the Commission's orders. This Court, after a hearing, found good cause for issuance of a temporary restraining order prohibiting the issuance of a certificate of convenience to Orlando Cartage until after the hearing in this cause scheduled before a three-judge court.

Florida Terminals is currently the sole carrier holding a certificate to handle freight forwarder traffic from Orlando to consignees in a surrounding eight county area, which is willing to enter into Section 409 [2] contracts with the local forwarders. It seeks to annul the Commission's order granting a certificate of convenience to Orlando Cartage which would give Orlando Cartage identical authority to that now held by Florida Terminals and would place the two of them in direct competition with each other.

Four freight forwarders and representatives of three business users of Florida Terminals appeared on behalf of Orlando Cartage. Two of those, International Forwarding Company (International) and Universal Carloading and Distributing Company (Universal), are commonly owned by United States Freight Company and co-load their freight carried into the area involved in this action.

---

1. 49 U.S.C., § 305.

2. Title 49, United States Code, § 1009.

International has its own Orlando terminal facilities and currently uses Florida Terminals for traffic outside the Orlando commercial zone and Orlando Cartage within the zone. From past performance it found the service of Florida Terminals' predecessor, Knollenberg's, to be sporadic and Florida Terminals' subsequent service less than satisfactory, constituting a continuing problem to obtain prompt and proper distribution (Tr. 28). International, however, found Orlando Cartage's local cartage service within the commercial zone to be prompt and satisfactory, but difficulty was experienced in obtaining proper and prompt distribution as well for suburban traffic (Tr. 128).

Universal found Florida Terminals' past service satisfactory and stated that it would continue to send a portion of its business to Florida Terminals even if Orlando Cartage's application was granted. Universal, however, felt that an additional carrier to serve the six freight forwarders in this area was necessary. International stated that if granted a certificate, Orlando Cartage would not be permitted to consolidate or co-load traffic from other local forwarders from its terminal facilities except Universal's. Universal stated the same intention.

Republic Carloading and Distribution Co., Inc. (Republic) found Florida Terminals' predecessor's service to be unsatisfactory because of delays in delivery of Republic traffic and supported Orlando Cartage's application and stated that it would give its off-line traffic to Orlando Cartage.

Florida Texas Freight, Inc. (Florida-Texas), which expressed dissatisfaction with service from Knollenberg's and Florida Terminals, complained specifically about Knollenberg's deliveries to Morse Shoe Co., Fern Park, Florida. Morse Shoe Co., in addition to Barker Sound & Music, Inc., and A. S. Beck Shoes, Inc., appearing on applicant's behalf, complained of what each held to be Florida Terminals' unsatisfactory service in holding and consolidating separate shipments.

The Joint Board found that:

" . . . The evidence establishes that the carrier now being used by them [Florida Terminals] and its predecessor have provided satisfactory service on over half of all the shipments they have transported, but that the service provided on the remainder has not generally been as desired. Since at least some of the forwarders have received complaints from their customers and have been threatened with loss of traffic because of the unsatisfactory service, the forwarders are compelled to require a very high quality service from the underlying carriers. Therefore, the service by the existing carriers must be found not to meet the needs of the forwarders in all respects and it must be concluded that they are entitled to the service of an additional carrier, . . . . "

Plaintiff's four basic objections to the report of the Joint Board are:

1. Failure of the Joint Board to make a finding of inadequacy of plaintiff's transportation services as a condition precedent to recommending issuance of another similar certificate of convenience and necessity to Orlando Cartage;

2. The Joint Board's finding that present and future convenience and necessity required certifying an additional motor carrier is not supported by substantial evidence, which evidence is credible and uncontroverted;

3. That the findings are a departure from the Commission's policy to let a present carrier handle all the traffic it can handle in an adequate and efficient manner.

4. Where there is no reasoned determination by the Joint Board that the existing carrier's services are inadequate and less than totally satisfactory there is no rational basis for recommending certification of an additional carrier.

Plaintiff's first objection that no finding of inadequacy of plaintiff's services was made as a condition precedent to recommending issuance of

an additional certificate is without actual support from the written findings. The Joint Board found that:

"   .   .   ., the services provided by the existing carriers must be found not to meet the needs of the forwarders in all respects."

This statement is construed by this Court under the circumstances of this case to be a finding by the Joint Board that Florida Terminal's and its predecessor's services had been and were inadequate. 49 U.S.C. § 304(a), Burlington Truck Lines v. United States, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962). Although not specifically stated, as such, this Court finds that the Board did find an inadequacy of services by plaintiff. Further, this Court has previously held in Petroleum Carrier Corporation v. United States, 258 F.Supp. 611 (M.D. Fla.1966) that a demonstrated need for more than one carrier may satisfy legal standards of public convenience and necessity even though no specific finding of inadequacy of existing service is found.

Plaintiff's objections numbered 3 and 4 are susceptible to be resolved and disposed of were this Court to determine that the Joint Board made a proper and valid determination that Florida Terminals' transportation services were inadequate. It therefore appears that the pivotal determination is encompassed by plaintiff's objection number 2, that is, whether the Joint Board's finding of inadequacy of present existing motor carrier services and the requirement for certification of an additional carrier are supported by substantial evidence.

The scope of judicial review of administrative action is found in Title 5, U.S. C. § 706(2)(A–F), formerly Title 5, U. S.C. § 1009(e).

"   .   .   .   The reviewing court shall (2) hold unlawful and set aside agency action; findings, and conclusions found to be:

(A)   arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

\*   \*   \*   \*   \*   \*

(E)   unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statutes."

■   Accordingly, this Court adopts the six prong test used by the District Court in Clearfield Cheese Co. v. United States, 308 F.Supp. 1072 (W.D.Mo. 1969).

"   .   .   .   [T]he decision   .   .   . of the Commission in this case can lawfully be affirmed by this Court if six standards are met:

(1)   the hearing procedures were fair and lawful.

(2)   evidence was received on the material factual issues.

(3)   the findings of fact are supported by substantial evidence.

(4)   the findings of fact are sufficient to resolve the crucial issues.

(5)   the correct legal standards were applied in determining the ultimate issues.

(6)   all regulations of defendant applied in arriving at the decision were lawful and valid as applied in this case."

■   This Court finds that the hearing procedures were fair and lawful. Counsel on behalf of any interested parties were permitted to file matter on behalf of or in opposition to Orlando Cartage's application, both at the time of modified proceedings and also the hearing before the Joint Board. The record reflects participation by counsel for the applicant, protestant and its predecessor. No objection to those proceedings as to evidence admitted is raised in this Court.

It is found that evidence was received on the factual issues material to the Commission's ultimate findings; principally on the quantity and quality of previous and current motor carrier service to those freight forwarders serving the eight county area and applicant's

present physical assets and ability to perform service required by the Commission after certification.

The standard to be applied by this Court in determining whether the Joint Board's findings are supported by substantial evidence was developed by the Supreme Court in Consolo v. Federal Maritime Commission, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966):

> " 'Substantial evidence' [is] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' . . . '[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' . . . This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo,* supra at 620, 86 S.Ct. at 1026.

There were three essential findings made by the Board which must be found to be supported by substantial evidence. First, that carrier service furnished by Florida Terminals was inadequate; second, that a second certificate of convenience and necessity should be granted whose scope duplicated the authority held by plaintiff; and finally, that such additional certificate should issue to Orlando Cartage.

On the issue of the quality and adequacy of plaintiff's services to local freight forwarders, extensive testimony was adduced, exhibits introduced and cross examinations had by counsel. From this Court's reading of the transcript of the eight days of hearings before the Joint Board, it appears that deficiencies were raised by the transit time studies submitted on the applicant's behalf. It was testified to by forwarders and business users appearing on behalf of the applicant that service was inconstant, sporadic and that separate shipments were held and consolidated

with subsequent shipments, allegedly by Florida Terminals. However, it was stated by the same witnesses that some of the information used by them in making the transit time studies was supplied either directly or indirectly through Orlando Cartage. Further, it was admitted by forwarders that they themselves on occasion had held separate shipments to consolidate them with later shipments for purposes of economy of movement. Furthermore, contentions were heard of instances of alleged misloadings of Florida Terminal's trailers by Orlando Cartage as a result of bad relations between the two.

■ While no evidence definitely demonstrated that Orlando Cartage changed or improperly completed a bill. of lading or other shipping document to reflect on the shipping time of traffic handled by Florida Terminals, some degree of doubt was cast on many of the time studies. However, in judicially reviewing administrative findings and conclusions, the District Court does not make a de novo finding based on the hearing transcript.

> " . . . The Commission must exercise its discretion under § 207(a) within the bounds expressed by the standard of 'public convenience and necessity' . . . and for the courts to determine whether the agency has done so, it must 'disclose the basis of its order' and 'give clear indication that it has exercised the discretion with which Congress has empowered it'. Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 . . . The agency must make findings that support its decision, and those findings must be supported by substantial evidence." Burlington Truck Lines v. United States, 371 U.S. 156, 167, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962).

■ The phrase "supported by substantial evidence" has been interpreted as being:

> " . . . more than a mere scintilla. It means such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting the test as originally set out in Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

Although doubts were cast upon certain of the exhibits presented concerning the adequacy of the service of Knollenberg's and Florida Terminals, nevertheless, evidence was presented to the Joint Board which can reasonably be found to support the Joint Board's finding of inadequacy. The question is not what decision this Court would make from such evidence, but rather whether the Joint Board's decision is supported by substantial evidence, as that phrase is defined. This Court finds that the Board properly exercised its discretion, and its decision is "supported by substantial evidence". *Richardson*, supra, 402 U.S. at 401, 91 S.Ct. 1420.

The second essential finding which must be found to be supported by substantial evidence is that a second certificate of convenience and necessity should by granted whose scope duplicated the authority held by plaintiff.

At the hearings before the Joint Board it was generally uncontested that significant growth was being experienced in the Orlando area, predominately in the surrounding suburban communities, and that such growth was and would continue to place great demands on the local carriers, e. g., Florida Terminals. This growth in the Orlando suburban areas was partially attributable to and augmented by the growth of large tourist areas, i. e., Disney World, requiring more greatly expanded carrier services than in previous periods.

When the fact of this significant sudden growth is taken in conjunction with the Board's finding of inadequacy of existing services, it is apparent that the Board's recommendation of the issuance of an additional certificate of convenience and necessity duplicating the scope of plaintiff's certificate is supported by substantial evidence.

The third essential finding is that the additional certificate of convenience and necessity duplicating plaintiff's certificate in its scope should be issued to Orlando Cartage.

It has been restated time and again that the reviewing court should not attempt to substitute its knowledge or decision for the knowledge and expertise of the Commission, United States v. Detroit and Cleveland Navigation Company, 326 U.S. 236, 241, 66 S.Ct. 75, 90 L. Ed. 38 (1945). Petroleum Carrier Corporation v. United States, 258 F.Supp. 611, 615 (M.D.Fla.1966). In the instant case the Board made the requisite finding that "applicant is fit, willing and able properly to perform such service proposed . . . ." 49 U.S.C. § 307. Whether this Court would have reached the same conclusion from a review of the record is irrelevant. Under the circumstances of this case as evidenced by the transcript of the proceedings before the Joint Board, this Court finds that the decision to grant the additional certificate to Orlando Cartage is supported by substantial evidence.

This Court, therefore, finds that the findings of the Commission are supported by substantial evidence and its conclusions are in accordance with applicable law. The Commission's order should be approved, the complaint dismissed and the temporary restraining order vacated; and an appropriate judgment will be entered.